**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Danny E. BASS, Defendant–Appellant.**

**No. 04CA1207.**

Colorado Court of Appeals,
Div. III.

Nov. 2, 2006.

John W. Suthers, Attorney General, Laurie A. Booras, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Lindsey Desoto Webb, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge FURMAN.

Defendant, Danny E. Bass, appeals from the judgment of conviction entered upon jury verdicts finding him guilty of attempted robbery of an at-risk adult, a class four felony, and use of a stun gun, a class five felony. He also appeals the sentence imposed. We affirm.

On July 9, 2003, the victim, a seventy-seven-year-old woman, was approaching her car in the parking lot of the Citadel Mall in Colorado Springs, when she noticed a man get out of a nearby car. The man approached her from behind, spun her around, and used a stun gun on her stomach. The victim was then pushed to the ground, and her nose was broken as a result of the fall. The man continued to use the stun gun on her back while attempting to steal the vic-tim's purse. After unsuccessfully struggling to remove the purse from the victim's arm, the man fled to the waiting car, got in the passenger side door, and the car fled the scene. The man later was identified as Bass.

Bass denied involvement in the crime, contending that Ben Abeyta, who owned the stun gun, was the perpetrator.

Bass's first jury trial ended in a mistrial. After a second trial, he was convicted of attempted robbery of an at-risk adult and use of a stun gun. He was found not guilty of second degree assault of an at-risk person.

The trial court sentenced Bass to ten years in the Department of Corrections plus three years mandatory parole for the attempted robbery count, and to a consecutive sentence of six years plus two years mandatory parole for the use of a stun gun count.

### I. Motion to Suppress

Bass first contends the trial court erred in denying his motion to suppress evidence discovered during a warrantless search of the trailer home where he was staying. We reject this contention.

Evidence at the suppression hearing revealed that, on July 9, 2003, officers interviewed employees of a carnival that was set up in the Citadel Mall parking lot. Earlier that day, the employees had seen a car matching the description of the one used in the attempted robbery. They identified Abeyta as the driver and Bass as the passenger. Abeyta and Bass were recently employed at the carnival and had been trying to collect a debt from fellow workers. The officers were told that the two had gone to a trailer home in Aurora to clean up and wash some laundry.

The following day, officers contacted Bass at the trailer home. Because they did not have a warrant, an officer obtained written consent from the tenant of the trailer home to search it. The tenant indicated that her son had a bedroom in the trailer where he stayed when he was not traveling with the carnival. According to the tenant, Bass and Abeyta had been guests staying in her son's bedroom the past couple of days.

The officers searched the closet and dresser in the son's bedroom and located clothing that the tenant identified as the clothing that Bass was wearing the previous night.

Bass contends that because the tenant did not have authority to consent to a search of his room, the seized clothing violated his Fourth Amendment guarantees. Assuming, without deciding, that Bass is correct, we conclude the trial court's admission of the seized clothing was nevertheless harmless beyond a reasonable doubt.

■ To find constitutional harmless error, a court must be confident beyond a reasonable doubt that the guilty verdict actually rendered in this trial was surely unattributable to the error. *Bernal v. People*, 44 P.3d 184 (Colo.2002).

■ To apply a harmless error analysis, an appellate court should examine a number of factors, including the importance of the evidence to the prosecution's case, the cumulative nature of the evidence, the presence or absence of corroborating or contradictory evidence on the material points of the evidence, and the overall strength of the prosecution's case. *Blecha v. People*, 962 P.2d 931 (Colo. 1998).

Here, the victim described her attacker as having bushy hair and a scraggly beard, and she stated that he was wearing "dark clothing and dark blue jeans" and "[h]e had a black shirt on, that ... had some sort of writing on it or picture." Likewise, the tenant testified that, on the early morning of July 10, Bass appeared "scruffily and scraggly ... his hair was all out of place," he had several days growth of beard, and he was wearing a "black shirt, a camel T-shirt" and dark blue jeans.

Bass argues that the admission of the seized clothing was not harmless because it helped bridge a gap between the victim's description of her attacker and Bass's physical appearance. However, the tenant testified in detail regarding Bass's appearance, and the seized clothing merely served to corroborate that description. Accordingly, we conclude the guilty verdict rendered in this case was surely unattributable to the error, *see Bernal, supra*, and, therefore, was harmless beyond a reasonable doubt.

## II. Jury Instructions Defining Complicity

■ Bass next contends that the trial court erred in providing jury instructions that did not properly explain the "dual mental state" requirement for a finding of guilt under the theory of complicity. We disagree.

■ Because Bass did not object at trial to the complicity instruction on this basis, we review for plain error. *See* Crim. P. 52(b); *People v. Garcia*, 28 P.3d 340 (Colo.2001). Plain error requires a defendant to demonstrate that a jury instruction affected a substantial right and to establish a reasonable possibility that the error contributed to his or her conviction. *People v. Garcia, supra.*

■ A person is liable as a principal for the behavior of another "if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense." Section 18–1–603, C.R.S.2006; *see People v. Elie*, 148 P.3d 359 (Colo.App. 2006).

■ Section 18–1–603 imposes a dual mental state requirement for complicity. First, the defendant must have the mens rea required for the underlying crime committed by the principal. Second, the defendant must intend for his or her own conduct to further the principal's crime. A jury must be instructed of this dual mental state requirement. *Bogdanov v. People*, 941 P.2d 247 (Colo.), *amended*, 955 P.2d 997 (Colo. 1997), *disapproved of on other grounds by Griego v. People*, 19 P.3d 1 (Colo.2001).

Here, the jury was instructed as follows:

A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:

1. A crime must have been committed.

2. Another person must have committed all or part of the crime.

3. The defendant must have had knowledge that the other person intended to commit all of or part of the crime.

4. The defendant must have had the intent to promote or facilitate the commission of the crime[.]

5. The defendant must have aided, abetted, advised, or encouraged the other person in the commission or planning of the crime.

This instruction tracks the pattern complicity instruction, CJI–Crim. 6:04 (1983), and § 18–1–603, and was approved by the supreme court in *Bogdanov v. People, supra,* 941 P.2d at 254, n. 10. Thus, the jury was properly instructed of the dual mental state requirement. *See also People v. Close,* 22 P.3d 933 (Colo.App.2000), *aff'd,* 48 P.3d 528 (Colo.2002); *People v. Osborne,* 973 P.2d 666 (Colo.App.1998).

Nevertheless, Bass contends that the trial court's instructions were erroneous because they did not explicitly state that, to be guilty of complicity, Bass must have shared the principal's intent to commit the underlying crime. We disagree.

An instruction requiring the jury to find that the defendant had the intent to promote or facilitate the commission of the crime is sufficient and satisfies the dual mental state requirement "because the defendant could not have *intended* his [or her] participation to further the crime unless he [or she] also intended the [underlying] crime to occur." *Bogdanov, supra,* 941 P.2d at 254 (emphasis in original).

Accordingly, we conclude the complicity jury instruction given in this case adequately stated the law and properly directed the jury to convict only if the prosecution had met the burden of proving the dual mental state requirement. Thus, we detect no error, plain or otherwise.

### III. Jury Questions

■ Bass next contends that the trial court erred in not responding appropriately to the jury's inquiry regarding the complicity instruction. We disagree.

■ Whether to provide the jury with additional written instructions in response to a question is a determination within the trial court's sound discretion. *People v. Mascare-*

*nas,* 972 P.2d 717 (Colo.App.1998); *People v. Baca,* 852 P.2d 1302 (Colo.App.1992).

During deliberations, the jury asked three questions about Instruction 17, the complicity instruction:

On instruction 17, item 3, must knowledge of intent to commit a crime exist prior to initiation of a crime or can knowledge be acquired during execution of a crime?

Does failure to stop an ongoing assault constitute knowledge of the intent to commit an assault?

On instruction 17, item 4, does leaving the scene of a crime constitute facilitating the commission of the crime?

The trial court responded:

In response to your requests for clarification regarding Instruction 17 and your question "Does failure to stop an ongoing assault constitute knowledge of the intent to commit an assault?" you are instructed to consider the instructions together as a whole.

The jury was also instructed that a person acts knowingly if he or she is aware that his or her conduct is practically certain to cause a result.

■ Absent a showing to the contrary, we must presume that the jury understood and followed the trial court's instructions. *Leonardo v. People,* 728 P.2d 1252 (Colo.1986); *People v. Moody,* 676 P.2d 691 (Colo.1984). This presumption, however, disappears if the jury affirmatively indicates a fundamental misunderstanding of an instruction it has been given. *Leonardo v. People, supra.* When the jury manifests its confusion by submitting to the trial court a question indicating that it does not understand an element of the offense charged or some other matter of law central to the guilt or innocence of the accused, the trial court must clearly and unambiguously clarify that matter for the jury. *See Sanchez v. People,* 820 P.2d 1103 (Colo.1991).

■ If a jury asks for clarification during deliberations on a point of law, the trial court should give an appropriate additional instruction unless (1) the original instructions can adequately inform the jurors;

(2) the request concerns matters not in evidence or questions which do not pertain to the law of the case; or (3) the request would require the court to express an opinion on factual matters that the jury should determine. *Leonardo v. People, supra; see People v. Rivas,* 77 P.3d 882 (Colo.App.2003). Instructions that match the supreme court's approved Colorado Jury Instructions are generally presumed to be adequate. *See Leonardo v. People, supra; People v. Mascarenas, supra.*

Here, the court properly refused to provide an additional instruction in response to question one, which asked whether knowledge of intent to commit a crime must exist prior to initiation of a crime or whether knowledge may be acquired during its execution. This question does not indicate that the jury fundamentally misunderstood the complicity or knowledge instruction. Thus, reference back to the original instruction is adequate. *See People v. Mascarenas, supra.*

▮ Questions two and three, which asked whether a failure to stop an ongoing assault constitutes knowledge of intent to commit an assault and whether leaving the scene of a crime constitutes facilitation of a commission of a crime, are determinations that require application of the facts of the case to the complicity instruction. Because the jury's request would have required the court to express an opinion on factual matters, the court properly declined to provide an additional instruction.

Accordingly, we find no abuse of discretion in the trial court's response to the jury's inquiry.

### IV. Lesser Included Offense

▮ Bass next contends that, because attempted robbery was identified in the charging document as the predicate offense for the charge of use of a stun gun, it is a lesser included offense of the stun gun offense. He thus argues that his conviction and sentence for attempted robbery must merge with his conviction for use of a stun gun. We disagree.

When a defendant's conduct "establishes the commission of more than one offense, the defendant may be prosecuted for each such offense." Section 18–1–408(1), C.R.S.2006; *Meads v. People,* 78 P.3d 290 (Colo.2003). However, multiple convictions must merge if one offense is a lesser included offense of another. Section 18–1–408(1)(a), C.R.S.2006; *Meads v. People, supra.*

▮ To determine whether one offense is a lesser included offense of another, we apply the strict elements test. Under the strict elements test, we compare the statutes governing each offense. *People v. Leske,* 957 P.2d 1030 (Colo.1998). If proof of facts establishing the statutory elements of the greater offense necessarily establishes all the elements of the lesser offense, the lesser offense is an included offense. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Meads v. People, supra,* 78 P.3d at 294; *People v. Leske, supra.* However, if each offense necessarily requires proof of at least one additional fact that the other does not, the strict elements test is not satisfied. *Meads v. People, supra.*

Section 18–4–301, C.R.S.2006, defines the offense of robbery. It provides:

(1) A person who knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation commits robbery.

(2) Robbery is a class 4 felony.

A person commits a criminal attempt if he or she "engages in conduct constituting a substantial step toward the commission of the offense." Section 18–2–101(1), C.R.S. 2006.

Section 18–12–106.5, C.R.S.2006, defines use of a stun gun and provides that "[a] person commits a class 5 felony if he knowingly and unlawfully uses a stun gun *in the commission of a criminal offense.*" (Emphasis added).

While attempted robbery requires proof that the defendant's actions constituted a substantial step toward taking a thing of value from a person, use of a stun gun only requires proof that the defendant used a stun gun in the commission of a criminal offense. Because use of a stun gun may accompany

any crime, and does not necessarily involve knowledge that a thing of value may be taken from a person, the statute defining use of a stun gun does not subsume all the essential elements of the lesser crime. *See Meads v. People, supra,* 78 P.3d at 295 (where proof of one offense does not *"necessarily* include all of the essential elements" of another offense, the other offense is not lesser included (emphasis in original)); *cf. People v. Delci,* 109 P.3d 1035 (Colo.App.2004) (because the offense of assault is specifically listed within the statute as a predicate offense for first degree burglary, assault is a lesser included offense of first degree burglary, and the two counts merge).

Accordingly, we conclude attempted robbery is not a lesser included offense of use of a stun gun, and the trial court was not required to merge the two convictions.

### V. Consecutive Sentences

■ Bass also contends that, because the two convictions were based on identical evidence, the trial court was required to impose concurrent sentences under § 18–1–408(3), C.R.S.2006. We disagree.

As a general rule, when a defendant is convicted of multiple offenses, the sentencing court has discretion to impose consecutive or concurrent sentences. *People v. Phong Le,* 74 P.3d 431 (Colo.App.2003). However, § 18–1–408(3) mandates concurrent sentences for offenses committed against a single victim when (1) the counts are based on the same act or series of acts arising from the same criminal episode; and (2) the evidence supporting the counts is identical. *Qureshi v. Dist. Court,* 727 P.2d 45 (Colo. 1986); *People v. Jurado,* 30 P.3d 769 (Colo. App.2001).

The mere possibility that the jury may have relied on identical evidence in returning more than one conviction is not sufficient to trigger the mandatory concurrent sentencing provision. *People v. Muckle,* 107 P.3d 380 (Colo.2005).

■ A trial court's decision to impose consecutive sentences based on a finding that separate acts support each of the convictions is reviewed under an abuse of discretion standard. Under the abuse of discretion standard, an appellate court must affirm the trial court's decision if there is any evidence in the record to support the trial court's finding that separate acts support each of the two convictions. *People v. Muckle, supra.*

Here, at sentencing, the court found that the evidence with respect to these two convictions was not identical, and, in the exercise of its discretion, it imposed consecutive sentences. There is record support for the trial court's finding.

To establish attempted robbery of an at-risk person, the prosecution would have to prove that Bass took a "substantial step" toward the commission of robbery through the use of force, threats, or intimidation. Evidence of Bass's throwing or pushing the victim to the ground to take her purse is sufficient to prove that offense. Consequently, any additional evidence presented regarding the stun gun use could have been used by the jury as evidence of Bass's continued attempts to steal the purse and, thus, could constitute a separate criminal offense. Accordingly, the acts were sufficiently distinguishable from each other so as to form the basis of the two counts.

Because there is record support for the trial court's finding that the jury relied on separate evidence to support the attempted robbery of an at-risk person and use of a stun gun, we conclude that the trial court did not err or abuse its discretion in imposing consecutive sentences. *See People v. Muckle, supra.*

### VI. Aggravated Range Sentence

■ Bass next contends that his Sixth Amendment right to trial by jury was violated because the district court imposed an aggravated range sentence for his conviction for use of a stun gun, based on findings of fact that were neither admitted by him nor found by a jury on proof beyond a reasonable doubt. We disagree.

■ Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v.*

*New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000).

█ The relevant statutory maximum for purposes of *Apprendi* is the maximum sentence the trial court may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington,* 542 U.S. 296, 303, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004)(emphasis omitted).

█ Discussing *Apprendi, Blakely,* and related cases, the Colorado Supreme Court has determined that there are four types of factors the trial court may rely upon to impose a constitutionally valid aggravated sentence: (1) facts the defendant admits; (2) facts found by a jury, as reflected in its verdict; (3) facts found by the court after the defendant has stipulated to judicial fact-finding for sentencing purposes; and (4) facts relating to prior convictions. The facts admitted by the defendant, found by a jury, or found by the court after the defendant stipulates to such fact-finding are considered "*Blakely*-compliant," while prior conviction facts are considered "*Blakely*-exempt." *Lopez v. People,* 113 P.3d 713 (Colo.2005).

Here, in reference to the six-year sentence imposed for use of a stun gun, the court stated:

> The use of the stun gun against [the victim is] based on the fact that she was elderly and of course that's what increases the sentence. Based on the fact that once she was down there, there was just no good reason to continue to use that stun gun, the Court will impose six years on that offense.

*See* §§ 18–1.3–401(1)(a)(V)(A), 18–1.3–406(2)(a)(II)(A), C.R.S.2006.

Bass contends that the jury did not find, and he never admitted, that "no good reason" existed for continued use of the stun gun. He argues that, under *People v. Moon,* 121 P.3d 218 (Colo.App.2004), a sentence beyond the presumptive range cannot be imposed on the basis of a judicial determination of the presence of an aggravating factor where the defendant has neither stipulated to the presence of that factor nor consented to judicial fact-finding.

█ However, *Moon* was overruled by *Lopez* after the opening brief in this case was filed. *Lopez v. People, supra,* 113 P.3d at 729 n. 13. In *Lopez,* the supreme court held that a single "*Blakely*-compliant" fact can support an aggravated range sentence, even where the court also identifies an invalid fact as an additional reason for the sentence. *Lopez v. People, supra,* 113 P.3d at 731.

Here, although the trial court mentioned that "no good reason" existed for continued use of the stun gun, it also relied on the victim's age as an aggravating factor. Because the jury determined that the victim was sixty years of age or older and, thus, an at-risk adult, the trial court did not err in imposing the six-year aggravated sentence.

Although Bass contends that the jury's finding that the victim was elderly did not constitute a sufficient finding under *Moon, supra,* the supreme court in *Lopez* held that a jury is not required to find that a fact is an "extraordinary aggravating circumstance." This determination is a conclusion of law that remains within the discretion of the trial court if it is based on *Blakely*-compliant or *Blakely*-exempt facts. *Lopez v. People, supra,* 113 P.3d at 726 n. 11. Accordingly, we perceive no error.

The judgment and sentence are affirmed.

TAUBMAN, J., and KAPELKE *, J., concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.