The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 11, 2021

## 2021COA30

**No. 18CA0783, *People v. Nevelik* — Crimes — Money
Laundering; Courts and Court Procedure — Jurisdiction of
Courts — Subject Matter Jurisdiction**

A division of the court of appeals holds that the State of

Colorado lacks jurisdiction over a defendant accused of money

laundering in an internet scam when there is no record evidence

that he had any contact with the victims in Colorado, either

physically or electronically. Because nothing in the record shows or

suggests that the defendant knew of any connection with the State

of Colorado, the district court lacked jurisdiction over him and its

judgment is vacated.

COLORADO COURT OF APPEALS **2021COA30**

Court of Appeals No. 18CA0783
El Paso County District Court No. 17CR4502
Honorable Barbara L. Hughes, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Steven Michael Nevelik,

Defendant-Appellant.

JUDGMENT VACATED

Division III
Opinion by JUDGE FREYRE
Furman and Johnson, JJ., concur

Announced March 11, 2021

Philip J. Weiser, Attorney General, Brittany L. Limes, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jacob B. McMahon, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Steven Michael Nevelik, appeals the judgment of conviction entered after a jury found him guilty of money laundering.  The jury convicted him based on his participation as a "money mule" in an internet scam.  Nevelik has been, and remains, a resident of Texas, and no record evidence shows that he had any contact with the Colorado victims, either physically or electronically, as part of this scam.  He challenges his conviction on three grounds: (1) the State of Colorado lacks jurisdiction over him because all of the acts related to the money laundering scam occurred in Texas; (2) the prosecution failed to prove that he acted with the requisite mental state; and (3) the trial court erroneously ordered him to pay restitution.  We agree with his first contention and conclude that the trial court lacked subject-matter jurisdiction.  Accordingly, we vacate the judgment of conviction and the restitution order and need not address his remaining contentions.

## I.     Background

¶ 2     The victims, a Colorado Springs couple, hired a real estate agent in Mexico to find a retirement home for them to purchase. The home they decided to buy required a down payment of $22,500. The real estate agent instructed the victims, by email, to deposit the

down payment into the agent's Mexican personal checking account, via a wire transfer.

¶ 3     The next day, the victims received another email, purportedly from the agent's email account, that directed them to wire the deposit to a United States bank, Regions Bank, to avoid any delays. In accordance with these new instructions, the victims wired money to the Regions Bank account.

¶ 4     Several days later, the real estate agent informed the victims that he had never received their deposit.  The victims then contacted the police, who later discovered that someone had hacked the real estate agent's email and had altered the wire transfer instructions.  The hacker's identity was never determined, and the victims' money was never recovered.

¶ 5     Colorado Detective Tremaine White obtained a search warrant to identify the Regions Bank accountholder to whom the funds had been transferred.  Bank records revealed that Nevelik had opened the account a few weeks before the transfer, and that the account was a business checking account for Nevelik's lawn mowing business in Texas.  The bank statements showed a wire transfer of $22,500 from the victims' account into Nevelik's account, a $700

ATM withdrawal and $10,500 withdrawal from Regions Bank and subsequent deposit into Mark London's account at Chicago Bank of America the next day, and a $9,900 wire transfer to Ayorinde Bosun two days after the wire transfer.[1] The bank records also contained copies of checks made out to Nevelik's lawn mowing company that had been deposited into the account.

¶ 6 At Detective White's request, Texas authorities arrested and extradited Nevelik to Colorado. Detective White interviewed Nevelik twice. During the first interview — which Detective White recorded and the prosecution introduced at trial — Nevelik told Detective White that he received an email from a Richard Wooten, who claimed that Nevelik could receive up to $10.5 million and a trip to London if he accepted funds into his bank account and then transferred the money to different accounts at Wooten's direction. Nevelik offered to provide his emails with Wooten to Detective White.

¶ 7 Nevelik admitted that he was suspicious of Wooten and the scheme to fly him to London, so he opened a separate account at

---

[1] Law enforcement never identified or located Mark London or Ayorinde Bosun.

Regions Bank in case Wooten "transferred bad money" to that account. He also told Wooten on one occasion that the arrangement did not seem legal. Nevelik denied knowing or having any contact with the Colorado victims or knowing anything about Wooten's scheme. Detective White and Nevelik met again and attempted to contact Wooten, but they were unsuccessful. Detective White never conducted any further investigation into Wooten, nor did he investigate Wooten's emails that Nevelik had offered to share with him.

¶ 8 The prosecution charged Nevelik with one count of theft and one count of money laundering. The jury acquitted Nevelik of theft, but it convicted him of money laundering. The trial court sentenced Nevelik to two years supervised probation and ordered him to pay $24,300 in restitution and interest.

## II. Jurisdiction

¶ 9 Nevelik contends that the State of Colorado did not have subject-matter jurisdiction to charge him with money laundering based on acts that solely occurred in Texas. Because we agree, we vacate the judgment of conviction.

4

A.     Standard of Review and Relevant Law

¶ 10    Jurisdiction is a question of law that we review de novo.  *See People v. Efferson,* 122 P.3d 1038, 1040 (Colo. App. 2005).  A challenge to a court's jurisdiction may be raised on appeal even when not raised in the district court.  *People v. Gardner,* 250 P.3d 1262, 1269 (Colo. App. 2010).

¶ 11    Colorado law provides that a person may be prosecuted in Colorado if the "conduct constitutes an offense and is committed either wholly or partly within the state."  § 18-1-201(1)(a), C.R.S. 2020.  "An offense is committed partly within this state if conduct occurs in this state which is an element of an offense or if the result of conduct in this state is such an element."  § 18-1-201(2).

¶ 12    As relevant here, section 18-5-309(1)(a)(I), C.R.S. 2020 provides:

> (1)A person commits money laundering if he or she:
>
> (a)Conducts or attempts to conduct a financial transaction that involves money or any other thing of value that he or she knows or believes to be the proceeds, in any form, of a criminal offense:

> (I) With the intent to promote the commission of a criminal offense . . . .

¶ 13    The statute also defines "conducts or attempts to conduct a financial transaction" as including, but not limited to, "initiating, concluding, or participating in the initiation or conclusion of a transaction." § 18-5-309(3)(a).

## B.    Application

¶ 14    We agree with Nevelik that Colorado lacks jurisdiction over the money laundering count under section 18-1-201(1)(a). The undisputed evidence shows that Nevelik committed all money movements in the State of Texas. He never traveled to, emailed, telephoned, or had any other contact with anyone in Colorado, nor did he commit any of the acts in furtherance of a money laundering offense in Colorado. Further, the victims did not know Nevelik, nor did he know them, and nothing in Nevelik's correspondence with Wooten suggests that Wooten initiated the scheme in Colorado or ever informed Nevelik of any Colorado connections.

¶ 15    We find *People v. Tinkle*, 714 P.2d 919 (Colo. App. 1985), instructive in reaching this conclusion. In *Tinkle*, the defendant entered into an oral agreement in Colorado with the victim. They

6

agreed that the defendant would sell the victim's merchandise in Texas and send the victim a portion of the proceeds. *Id.* at 920. Unable to sell the merchandise in Texas, the defendant then traveled to Arizona, sold the merchandise, but failed to pay any portion of the proceeds to the victim. *Id.* The defendant was subsequently charged and convicted of theft in Colorado. *Id.* On appeal, he argued that no element of the crime was committed in Colorado and that the trial court lacked jurisdiction over him. A division of this court agreed and reversed his conviction. *Id.* The division rejected the People's argument that the oral agreement, made in Colorado, resulted in thefts that occurred outside Colorado and, thus, conferred jurisdiction under section 18-1-201(2)'s language "being committed partly within this state." *Id.* at 920-21. Instead, it reasoned that the crucial elements of theft — an intent to permanently deprive and the actual deprivation — occurred outside Colorado and that, therefore, Colorado lacked jurisdiction over this crime. *Id.*

¶ 16    As in *Tinkle*, the essential elements of money laundering occurred outside of Colorado. Nevelik opened an account in Texas, received the funds in Texas, and never solicited the Colorado

7

victims to wire the funds to Texas. Thereafter, Nevelik initiated wire transfers to other non-Colorado bank accounts and withdrew cash from the Texas account. No part of Nevelik's conduct in either initiating or concluding any financial transaction occurred in Colorado.

¶ 17  We are not persuaded otherwise by the People's reliance on *People v. Chase*, 2013 COA 27, to argue that the Colorado victims' wiring of funds from Colorado was sufficient to confer jurisdiction under the statute. In *Chase*, the defendant, a Colorado resident angry over an eviction notice that the Colorado resident victims posted on his door, sent threatening emails from Boston to the victims, who opened those emails while in Baltimore. *Id.* at ¶¶ 4-7, 24, 27-29. He was convicted of stalking in Colorado. *Id.* at ¶ 25. He challenged the court's jurisdiction on appeal and argued that because the emails were initiated and opened outside of Colorado, the court lacked jurisdiction. The division concluded, however, that the essential element of "causing a reasonable person to be in fear for his or her safety" (credible threat element) partly occurred in Colorado because the defendant and the victims were Colorado residents, the defendant was unaware the victims were out-of-state

8

when he sent the email, the defendant knew where the victims lived, the victims knew they would return to Colorado, and the eviction notice that prompted the conduct was posted in Colorado. *Id.* at ¶ 26. The division reasoned that the defendant should not benefit from the mere coincidence that the victims were physically in Baltimore when they read the threatening emails. *Id.* at ¶ 30.

¶ 18 Contrary to *Chase,* Nevelik did not know the victims before the offense, never had contact with the victims, and never performed any act of money laundering, either in whole or in part, in Colorado.

¶ 19 We acknowledge that money laundering requires a person to "know[] or believe[]" the money constituted "the proceeds, in any form, of a criminal offense" and that any transaction involving that money be conducted "[w]ith the intent to promote the commission of a criminal offense." § 18-5-309(1)(a)(I). And we acknowledge that the proceeds wired to Nevelik's bank account resulted in a theft of the victims' funds in Colorado. However, contrary to the People's assertion, no record evidence showed that Nevelik knew or believed the wired funds came from Colorado or that he possessed the intent to promote the commission of a theft involving the Colorado victims.

9

Indeed, nothing in the record shows or even suggests that Nevelik knew of any connection with the State of Colorado.

¶ 20    Likewise, the United States Supreme Court's decision in *Strassheim v. Daily*, 221 U.S. 280 (1911), cited by the People, does not compel a different conclusion.  In that case, Michigan authorities sought to extradite the defendant from Illinois to stand trial for participating in a scheme to obtain money from Michigan by false pretenses.  *Id.* at 281.  The defendant was accused of colluding with his company's secretary and with a Michigan state official to sell used machinery for the price of new machinery.  *Id.* at 282.  The Supreme Court concluded that the defendant had committed a crime under the laws of Michigan, though he was not in Michigan at the time of the offense.  *Id.* at 285.  The Court explained that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power."  *Id.* at 285.

¶ 21    While Nevelik committed the acts outside of Colorado and may have been suspicious of Wooten and his promise of $10.5 million

and a trip to London, the prosecution presented no evidence that Nevelik was aware or intended to promote a theft in Colorado. Thus, *Strassheim* is distinguishable.

¶ 22 Accordingly, we conclude that the trial court lacked subject-matter jurisdiction over the money laundering count and vacate the judgment of conviction.

### III. Conclusion

¶ 23 The judgment is vacated.

JUDGE FURMAN and JUDGE JOHNSON concur.