The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 24, 2025

## 2025COA68

**No. 23CA1865, *People v. Brennan* — Crimes — Unauthorized Use of a Financial Transaction Device — Identity Theft; Criminal Law — State Jurisdiction**

A division of the court of appeals considers the novel issue of whether a Colorado court can exercise jurisdiction over a defendant for unauthorized use of a financial transaction device and identity theft based on the defendant's solicitation, from a state other than Colorado, of out-of-state services using a Colorado resident's credit card without the resident's authorization. The division holds that, because the conduct elements of the charged offenses exclusively occurred out of state, a Colorado court lacks jurisdiction over the defendant's prosecution. It accordingly vacates the defendant's judgment of conviction.

Court of Appeals No. 23CA1865
Douglas County District Court No. 22CR1004
Honorable Christopher J. Munch, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Erin Brennan,

Defendant-Appellant.

JUDGMENT VACATED

Division VII
Opinion by JUDGE LIPINSKY
Pawar and Lum, JJ., concur

Announced July 24, 2025

Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

The Noble Law Firm, LLC, Antony Noble, Lakewood, Colorado, for Defendant-Appellant

¶ 1     Americans reported more than 440,000 cases of credit card fraud in 2022.  Fed. Trade Comm'n, *Consumer Sentinel Network Data Book 2024*, at 15 (2025), https://perma.cc/4APJ-JXNA. Christopher Caltabiano was one of them.

¶ 2     Caltabiano, a Colorado resident, did not fall victim to an anonymous scammer launching scores of phishing emails from a computer in a distant land.  Rather, the unauthorized user of Caltabiano's Mastercard (the card) was his ex-wife, defendant, Erin Brennan, a New York resident.  And Brennan did not use the card to fund a spending spree; she used it to pay a portion of two of their children's expenses at a summer day camp, Camp Ramaquois, in Pomona, New York.

¶ 3     Brennan was charged with and convicted of two crimes in Colorado — unauthorized use of a financial transaction device (unauthorized use) in violation of section 18-5-702(1)(b), (3)(g), C.R.S. 2024, and identity theft in violation of section 18-5-902(1)(a), C.R.S. 2024 — for using the card without Caltabiano's permission.

¶ 4     On appeal, Brennan argues that the Colorado district court lacked jurisdiction over her because

- she allegedly instructed Camp Ramaquois to use the card for a portion of the children's expenses during a call from one New York location to another;

- she therefore only used Caltabiano's "financial device" in New York;

- she formed the requisite intent for the two offenses while in New York; and

- the impact of her use of the card on Caltabiano was not an element of either unauthorized use or identity theft.

¶ 5    This is the first decision to consider whether a Colorado court can exercise jurisdiction over a defendant for unauthorized use and identity theft based on the defendant's solicitation, from a state other than Colorado, of out-of-state services using a Colorado resident's credit card without the resident's authorization.

¶ 6    We agree with Brennan and vacate her judgment of conviction.

## I.    Background

¶ 7    The underlying facts are largely undisputed.

¶ 8    During their marriage, Brennan and Caltabiano lived in New York with their three children. Brennan and Caltabiano were divorced in New York in 2019. Following the divorce, Brennan and

2

the children remained in New York, while Caltabiano relocated to Colorado.

¶ 9 Brennan and Caltabiano's divorce settlement specified, among other terms, that Caltabiano would be responsible for paying sixty-five percent of all mutually agreed-upon extracurricular expenses for the children, including summer camp expenses.

¶ 10 Two of the children attended Camp Ramaquois in 2021. Caltabiano paid a portion of the children's camp expenses that year. He uploaded the card information to Camp Ramaquois's "system," but he never instructed Camp Ramaquois "to take [the] card off a file or to remove it."

¶ 11 In December 2021, Brennan emailed Caltabiano about the estimated cost of the children's summer camps in 2022. Caltabiano responded that he was not prepared to authorize any summer camps for the coming year because he was still paying off the 2021 camp expenses and was not comfortable "putting on credit card debt." Brennan said she wanted to enroll the children before spots filled up, and Caltabiano responded, "I am not agreeing to send them to these camps as they are too costly and alternatives can be found that are more affordable."

¶ 12    In January 2022, Brennan sent Caltabiano an updated budget proposal for the children's camp expenses.  Caltabiano said he would pay fifty percent of the expenses and suggested sending the children to a less expensive day camp in Colorado.  Brennan responded that the children wanted to attend camp in New York with their friends.

¶ 13    In April, Brennan informed Caltabiano that she had registered two of the children in Camp Ramaquois, noted that he "had put [the] card down for [Camp] Ramaquois" the prior year, and said she could "put a portion on [the card] and give them [hers]."  Caltabiano responded that he had "always contested the reasonableness of these charges," he had "no money," and Brennan could "get compensated when/if [Caltabiano received] a bonus in December."

¶ 14    The next month, Caltabiano discovered a $10,453.46 charge for Camp Ramaquois on his credit card statement.  He testified at trial that he did not authorize Brennan to charge this sum to the card.  Caltabiano told Camp Ramaquois that he had not authorized the charge and requested a refund.  When Camp Ramaquois would not reverse the charge, Caltabiano unsuccessfully sought a credit for the disputed charge from the credit card company.  He later

reported to Colorado law enforcement authorities that Brennan had used the card without authorization. She was charged with unauthorized use and identity theft.

¶ 15 Brennan's counsel filed a pretrial motion to dismiss for lack of jurisdiction pursuant to section 18-1-201, C.R.S. 2024. The court summarily denied the motion, without explanation. Brennan unsuccessfully raised the issue again at trial. The court concluded that it had jurisdiction because there was a "sufficient nexus" between Brennan's conduct and the elements of unauthorized use and identity theft. The court placed significant weight on Brennan's knowledge that Caltabiano resided in Colorado at the time of the unauthorized charge.

¶ 16 Brennan testified at trial that, although she authorized Camp Ramaquois to charge thirty-five percent of the children's expenses to her own credit card, she did not instruct the camp to charge the balance to the card. Brennan said that she did not discuss payment of the remaining balance with Camp Ramaquois, saying, "[t]hey didn't ask me anything" about covering the balance.

¶ 17 After the jury convicted Brennan of unauthorized use and identity theft, the court sentenced her to one year in the custody of

the Department of Corrections, suspended on the conditions that she pay a $5,000 fine, take a victim empathy class, and make full restitution.

¶ 18    Brennan raises a single issue in this appeal — whether her judgment of conviction should be reversed because the court lacked jurisdiction over the case under section 18-1-201. We now turn to the law governing this appeal.

## II.    Law

### A.    Standard of Review

¶ 19    "Jurisdiction is a question of law that we review de novo." *People v. Nevelik*, 2021 COA 30, ¶ 10, 491 P.3d 492, 493.

### B.    The Jurisdictional Statute

¶ 20    Section 18-1-201 sets forth the limits on Colorado courts' subject matter jurisdiction in criminal cases. The statute makes clear that the courts in this state cannot exercise jurisdiction over every criminal case involving a Colorado-based victim. The statute provides:

> (1) A person is subject to prosecution in this state for an offense which he commits, by his own conduct or that of another for which he is legally accountable, if:

> (a) The conduct constitutes an offense and *is committed either wholly or partly within the state . . . .*

§ 18-1-201 (emphasis added). An offense is committed "partly within this state" if (1) "conduct occurs in this state which is an element of an offense," or (2) "the result of conduct in this state is such an element." § 18-1-201(2).

¶ 21    "The definition of an offense *may* include conduct, circumstances, or result elements." *People v. Baca,* 852 P.2d 1302, 1305 (Colo. App. 1992); *see* Model Penal Code § 1.13(9) (Am. L. Inst. 1985). Conduct elements describe "the nature of the forbidden conduct" and include both the underlying action or omission and its accompanying state of mind. *Baca,* 852 P.2d at 1305; § 18-1-501(2), C.R.S. 2024. "[A]ttendant circumstance[]" elements — which do not confer jurisdiction on a court, *see* § 18-1-201 — include "the circumstances surrounding [a prohibited act's] commission . . . as distinguished from any element requiring that such act have a particular effect, or cause a particular result." *People v. Childress,* 2015 CO 65M, ¶¶ 21, 29, 363 P.3d 155, 161, 164. Result elements indicate that causation is part of a crime's actus reus. *See Dep't of Nat. Res. v. 5 Star Feedlot, Inc.,* 2021 CO

27, ¶ 69, 486 P.3d 250, 265 (Hood, J., dissenting) (citing 1 Paul H. Robinson, *Criminal Law Defenses* § 88 (2020)) ("Causation is a part of a crime's actus reus whenever the General Assembly prohibits a specific result.").

¶ 22     Section 18-1-201(3) provides that "[w]hether an offender is in or outside of the state is immaterial to the commission of an offense *based on an omission to perform a duty imposed by the law of this state*." (Emphasis added.)

¶ 23     Although no previous Colorado case has applied section 18-1-201 to prosecutions for unauthorized use or identity theft, divisions of this court have considered whether a court in this state could exercise jurisdiction over prosecutions for other offenses involving out-of-state conduct. We review those cases next.

C.     The Cases Applying Section 18-1-201

¶ 24     Fifty years ago, a division of this court decided that a Colorado court could exercise jurisdiction over a theft case involving the sale of stolen power saws in Colorado. *See People v. Martinez*, 543 P.2d 1290, 1291 (Colo. App. 1975). In *Martinez*, a Colorado resident and his friend purchased the saws in Colorado from Martinez and his codefendant, who displayed them in the trunk of the codefendant's

8

vehicle. *Id.* The saws had been stolen from a store in New Mexico. *Id.* at 1291-92.

¶ 25    On appeal, Martinez argued that the Colorado court lacked jurisdiction over his case because he was charged with "theft by taking," and the "taking" had occurred in New Mexico. *Id.* at 1292. The division disagreed:

> The elements of theft as charged here are knowingly obtaining or exercising control over a thing of value of another without authorization and with the intent to deprive another permanently of the use or benefit of his property. There was evidence presented that [Martinez] exercised control over these chain saws in Colorado without authorization. Thus, the offense of theft was "committed partly within this state" as contemplated by [section] 18-1-201(2) . . . .

*Id.* Accordingly, a person who exercises control over stolen goods in Colorado can be prosecuted for theft in this state.

¶ 26    In contrast, another division of this court held that no element of theft occurred in Colorado when, pursuant to an oral agreement, the defendant took possession of a Colorado resident's goods, sold them in another state, and failed to pay the sales proceeds to the Coloradan. *See People v. Tinkle,* 714 P.2d 919, 920 (Colo. App. 1985). In *Tinkle,* the trial court concluded it could exercise

9

jurisdiction over the case because the defendant's actions in Colorado — taking possession of the goods after agreeing to sell them for the victim in another state — whether "criminal or not, were part and parcel of the theft." *Id.* The division squarely rejected the trial court's "part and parcel" rationale because the place where a defendant came into possession of the thing of value is "not an element of the crime of theft." *Id.*

¶ 27 Almost thirty years later, in *People v. Chase*, the division held that a Colorado court could exercise jurisdiction over the prosecution of a defendant charged with stalking for sending threatening emails to current and former personnel at his housing complex in Grand County. 2013 COA 27, ¶¶ 2, 5-7, 411 P.3d 740, 744-45. In the emails, the defendant threatened to retaliate against the victims, who were all Colorado residents, in this state if they did not take an action in Colorado — remove an eviction notice from the defendant's door. *Id.* at ¶¶ 4-7, 411 P.3d at 745. But the defendant sent the emails from Boston, and the recipients received them while on vacation in Baltimore. *Id.* at ¶ 24, 411 P.3d at 747. Based on these facts, the defendant argued that the Colorado court lacked jurisdiction over the case. *Id.*

¶ 28    As relevant here, the stalking statute that the division analyzed in *Chase* required the prosecution to prove that the defendant knowingly made a credible threat to another person. *Id.* at ¶ 20, 411 P.3d at 747 (citing § 18-9-111(4)(b)(II), C.R.S. 2008). The version of the stalking statute in effect at the time defined a "credible threat" as a threat that would "cause a reasonable person to be in fear for the person's safety." *Id.* at ¶ 21, 411 P.3d at 747 (quoting § 18-9-111(4)(c)(II), C.R.S. 2008).

¶ 29    The division reasoned that the critical analysis was "not where the e-mails were written or read, but rather whether the result of Chase's conduct, namely, causing a reasonable person to be in fear for his or her safety, occurred, at least in part, in Colorado." *Id.* at ¶ 24, 411 P.3d at 747. It concluded that the result of the defendant's conduct partly occurred in Colorado primarily because the threatening emails would have caused reasonable people in the victims' position to be in fear for their safety *in Colorado. Id.* at ¶ 26, 411 P.3d at 748; *see also People v. Jacobs*, 91 P.3d 438, 440, 442 (Colo. App. 2003) (holding that the defendant could be prosecuted in Colorado for soliciting for child prostitution when, in response to a California detective's website offering "very young . . .

11

escorts," the defendant sent emails proposing to engage in sexual acts with a twelve-year-old girl in Colorado).

¶ 30     In contrast, in *Nevelik,* the defendant, a Texas resident, had no contact with the Colorado victims. *Nevelik,* ¶ 1, 491 P.3d at 492. The victims in that case lost more than $20,000 through a wire fraud scheme, and the defendant was a "money mule" hired to move the victim's funds from the defendant's bank account to the instigators' accounts. *Id.* at ¶¶ 1-2, 5-7, 491 P.3d at 492-93. The defendant's conviction for money laundering rested on, as relevant here, his role in conducting a financial transaction that involved money he knew was, or believed to be, the proceeds of a criminal offense, with the intent to promote the commission of a criminal offense. *Id.* at ¶ 12, 491 P.3d at 493-94 (citing § 18-5-309(1)(a)(I), C.R.S. 2024).

¶ 31     The division held that Colorado lacked jurisdiction over the defendant's prosecution because "the essential elements of money laundering occurred outside of Colorado" and because the defendant "never traveled to, emailed, telephoned, or had any other contact with anyone in Colorado, nor did he commit any of the acts

12

in furtherance of a money laundering offense in Colorado." *Id.* at ¶¶ 14, 16, 491 P.3d at 494.

¶ 32    These authorities instruct that, when conducting a jurisdictional analysis, we must closely examine the material elements of the charged offenses and disregard facts not subsumed within those elements. Accordingly, we consider whether Brennan engaged in conduct in Colorado that constituted an element of either unauthorized use or identity theft; whether the result of her conduct was an element of either offense (and if so, whether the result occurred in this state); and whether Brennan's conviction was based on her failure to perform a duty required under Colorado law. We therefore turn to the elements of the unauthorized use and identity theft statutes.

### D.    The Unauthorized Use and Identity Theft Statutes

### 1.    Unauthorized Use of a Financial Transaction Device

¶ 33    (1) A person commits unauthorized use of a financial transaction device if [s]he uses such device for the purpose of obtaining cash, credit, property, or services or for making financial payment, *with intent to defraud, and with notice that . . .*

. . . .

(b) For any reason h[er] use of the financial transaction device is *unauthorized either by the issuer thereof or by the account holder.*

(2) For purposes of paragraphs (a) and (b) of subsection (1) of this section, "notice" includes either notice given in person or notice given in writing to the account holder.

§ 18-5-702 (emphases added).

### 2.   Identity Theft

(1) A person commits identity theft if he or she:

(a) Knowingly uses the personal identifying information, financial identifying information, or financial device of another without permission or lawful authority with the intent to obtain cash, credit, property, services, or any other thing of value or to make a financial payment . . . .

§ 18-5-902.

### III.   Analysis

#### A.   Colorado Lacks Jurisdiction Over This Case Because All the Conduct Elements Occurred in New York and the Statutes Governing the Offenses Do Not Include Result Elements

We conclude that the court lacked subject matter jurisdiction over Brennan's prosecution because none of her conduct forming a material element of either offense occurred in Colorado, and the

14

unauthorized use and identity theft statutes do not include a result element. *See* § 18-1-201(2).

¶ 36    The following tables show the elements of unauthorized use and identity theft, the classification of each element, and where in this case the conduct occurred:

| Elements of Section 18-5-702(1)(b): Unauthorized Use | Type of Element (Conduct, Circumstance, or Result) | Location |
|---|---|---|
| 1.  Use of a financial transaction device | Conduct | New York |
| 2.  for the purpose of obtaining cash, credit, property, or services or for making financial payment | Conduct | New York |
| 3.  with intent to defraud | Conduct | New York |
| 4.  and with notice that her use of the financial transaction device is unauthorized by the account holder | Circumstance | N/A |

(Because attendant circumstance elements — unlike conduct or result elements — do not confer jurisdiction, *see* § 18-1-201, we

15

need not determine the geographic location of the attendant circumstance elements of the charged offenses.)

¶ 37    Brennan notes that the "for the purpose" element of the unauthorized use statute could be viewed as a result element to the extent section 18-5-702 requires that the "defendant in fact obtain[ed] possession or use of cash, credit, property, or services through the unauthorized use of a financial transaction device." *People v. Novitskiy*, 81 P.3d 1070, 1073 (Colo. App. 2003), *abrogated on other grounds by Reyna-Abarca v. People*, 2017 CO 15, ¶¶ 34-36, 390 P.3d 816, 821-22.  But Brennan reads too much into the element's language, particularly as the *Novitskiy* division did not consider the classification of the unauthorized use statute's elements.  But even if "for the purpose" could be deemed a result element, our analysis would not change because Brennan engaged in conduct in New York for the purpose of obtaining Camp Ramaquois's services in New York.

| Elements of Section 18-5-902(1)(a): Identity Theft | Type of Element (Conduct, Circumstance, or Result) | Location |
|---|---|---|
| 1. Knowingly | Conduct | New York |
| 2. uses the financial device of another | Conduct | New York |
| 3. without permission or lawful authority | Circumstance | N/A |
| 4. with the intent to obtain cash, credit, property, services, or any other thing of value or to make a financial payment | Conduct | New York |

¶ 38    We recognize that the pattern jury instructions for unauthorized use and identity theft break down the elements of the offenses even further — for example, separating "with intent to defraud" into two elements ("with intent" and "to defraud").  COLJI-Crim. 5-7:01 (2024); *see* COLJI-Crim. 5-9:01 (2024).  However, we decline to take such a granular approach to the plain language of the unauthorized use and identity theft statutes.  *See People v. Hernandez,* 2025 CO 13, ¶ 9, 566 P.3d 995, 997 (We give statutes their "plain and ordinary meaning." (quoting *People v. Steen,* 2014 CO 9, ¶ 9, 318 P.3d 487, 490)); *see also Krueger v. Ary,* 205 P.3d

1150, 1154 (Colo. 2009) ("[T]he pattern instructions are not law, not authoritative, and not binding on this court.").

¶ 39    In any event, no conduct elements occurred in Colorado because Brennan did not improperly obtain the card information in Colorado. Nor did she ever even possess that information. Caltabiano had previously provided it to Camp Ramaquois without restriction. Brennan merely instructed Camp Ramaquois to use the card information on file to charge Caltabiano for his share of the two children's camp expenses.

¶ 40    It is of no consequence that, as the People point out, Caltabiano's physical credit card was located in Colorado because, again, Brennan never had possession of it. The financial transaction device that Brennan allegedly used without authorization was an "account number representing a financial account," § 18-5-701(3), C.R.S. 2024, because she instructed the New York camp to use the credit card information in its file.

¶ 41    The prosecution presented no evidence that Brennan formed the mental state elements of the unauthorized use and identity theft statutes in Colorado. Thus, her unlawful use of a financial device

18

involved calling the camp and telling it to use a credit card it already had on file — conduct that solely occurred in New York.

¶ 42     We are not persuaded by the People's argument that Brennan's knowledge that Caltabiano resided in Colorado and her email correspondence to him conferred jurisdiction in Colorado.  We disagree with the People's contention that, under *Chase*, Brennan's knowledge of the victim's state of residence was sufficient to establish jurisdiction in this state.

¶ 43     We acknowledge that, in *Chase*, the division quoted with approval the United States Supreme Court's statement in *Strassheim v. Daily*, 221 U.S. 280, 285 (1911), that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power."  *Chase*, ¶ 29, 411 P.3d at 748.  But the facts in *Chase* and *Strassheim*, as well as the Colorado jurisdictional statute, caution against an overly broad reading of this language.

¶ 44     As noted above, in *Chase*, there were numerous connections between the elements of the stalking charge of which the defendant

was convicted and Colorado. (Although the defendant was also convicted of three misdemeanor harassment counts, he did not challenge those convictions on jurisdictional grounds. *Id.* at ¶¶ 1, 11, 411 P.3d at 744, 746.) The defendant sent threatening emails to victims he knew resided in Colorado, even though they received the emails while in another state; he knew where the victims lived in Colorado and that they would be returning to this state; he demanded that the victims take specific actions in Colorado; he needed to be in Colorado to determine whether the victims complied with his demands; and he threatened to retaliate against the victims in Colorado. *Chase*, ¶¶ 2-7, 26, 411 P.3d at 744-75.

¶ 45    Significantly, the stalking statute that the division discussed in *Chase* included a result element with a strong tie to Colorado. *See id.* at ¶ 22, 411 P.3d at 747 ("[T]he elemental conduct of making a credible threat" for purposes of the stalking statute "is defined by its result of causing a reasonable person to be in fear as described."). The *Chase* division concluded there was sufficient evidence to establish that the defendant's emailed threats "would have caused a reasonable person in the position of [the victims] to

be in fear for their own safety and the safety of other persons *in Colorado.*" *Id.* at ¶ 26, 411 P.3d at 748 (emphasis added).

¶ 46   Unlike the stalking offense analyzed in *Chase,* the offenses of which Brennan was convicted did not include result elements, much less result elements that occurred, in whole or in part, in Colorado.  Brennan's transmission of emails to Caltabiano in Colorado was not an element of either charged offense: The prosecution was not required to establish that Brennan communicated with Caltabiano to prove that she committed unauthorized use or identity theft.  Brennan could have been convicted without evidence of the emails.  In sum, we need not consider whether any result of Brennan's conduct occurred in Colorado because neither the unauthorized use nor the identity theft statute includes a result element.  *See* § 18-1-201(2).

¶ 47   Similarly, the facts in *Strassheim* do not support the conclusion that a state may exercise jurisdiction over a criminal defendant solely because the defendant knew that the victim resided in the forum state, even if the underlying criminal statute does not include a result element linked to the forum.  In *Strassheim,* the United States Supreme Court held that a Michigan

21

court could exercise jurisdiction over the defendant's criminal case because he committed an "overt act" while physically present in Michigan. 221 U.S. at 285. Thus, allowing a state to prosecute a criminal case solely because the defendant knew the victim resided in that state would unreasonably expand the sweep of jurisdictional statutes such as section 18-1-201.

¶ 48 The facts in this case are akin to those in *Nevelik,* in which none of the defendant's actions occurred in Colorado. *Nevelik,* ¶¶ 14, 16, 491 P.3d at 494. Although, unlike the defendant in *Nevelik*, Brennan knew the victim's identity and his state of residence, those facts are insignificant because such knowledge was not an element of either unauthorized use or identity theft.

¶ 49 The court's rationale for exercising jurisdiction — that there was a "sufficient nexus" between Brennan's conduct and the elements of the unauthorized use and identity theft statutes — tracked the trial court's determination in *Tinkle* that the defendant's actions in Colorado were "part and parcel" of the charged offense. 714 P.2d at 920. But the division in *Tinkle* rejected that reasoning on appeal, and the "sufficient nexus" analysis fares no better here.

Section 18-1-201 cabins our jurisdictional analysis to the specific elements of the charged offenses.

¶ 50   Because no conduct related to any element of the offenses of which Brennan was convicted occurred in Colorado, the court erred by exercising jurisdiction over Brennan's case. *See* § 18-1-201(2).

### B.   Brennan Did Not Fail to Perform a Duty Required Under Colorado Law

¶ 51   The People alternatively argue that, because Brennan did not obtain Caltabiano's authorization to use the card, she engaged in unauthorized use and identity theft based on her omission to perform a duty imposed by Colorado law. *See* § 18-1-201(3).

¶ 52   To support this argument, the People cite *People v. Haynie*, a parental kidnapping case arising from the defendant father's breach of his duty under the subject divorce decree to timely return the children to their mother. 826 P.2d 371, 373 (Colo. App. 1991). But Brennan did not fail to perform a duty imposed by Colorado law.

¶ 53   Unlike the father in *Haynie*, Brennan did not violate the law by not seeking Caltabiano's authorization to use the card before Camp Ramaquois charged it for the children's expenses. The elements of unauthorized use and identity theft do not require the user of the

23

financial device to take the initial affirmative step of seeking authorization to use the device. Rather, they prohibit the intentional or knowing use of those devices to make an unauthorized payment. Thus, a shopper who discovers a credit card on the floor of a grocery store does not violate the law by failing to hunt down its owner to ask for permission to use the card. The shopper can violate the unauthorized use and identity theft statutes simply by using the credit card with the knowledge that the shopper lacks permission to do so.

¶ 54    The Florida and Massachusetts cases on which the People rely are inapposite, either because the elements of the charged offenses included an affirmative duty to obtain the victim's consent or because the state's jurisdictional law materially differs from section 18-1-201. *See State v. Roberts*, 143 So. 3d 936, 937-38 (Fla. Dist. Ct. App. 2014) (holding that a Florida court had jurisdiction over an Indiana defendant's prosecution for violating Florida's identity theft statute because one of its elements requires the use of another's personal information "without first obtaining that individual's consent," constituting an omission of a duty imposed by Florida law) (citation omitted); *Commonwealth v. Thompson*, 50 N.E.3d 845,

24

857-59 (Mass. App. Ct. 2016) (addressing a statute that, like the Florida statute, contained a failure to obtain consent element and applying the Massachusetts rule that a court can exercise jurisdiction over a criminal case if the defendant's conduct had "detrimental effects" in the state, without considering whether such effects *must be an element of the offense*).

¶ 55    Thus, the court could not exercise jurisdiction over Brennan's case on the grounds that she failed to perform a legal duty. Neither the unauthorized use nor the identity theft statute imposes an affirmative duty that the defendant obtain the victim's consent before using the victim's financial device.

## IV.   Disposition

¶ 56    The judgment of conviction is vacated, and therefore, the district court must dismiss the charges against Brennan.

JUDGE PAWAR and JUDGE LUM concur.