**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Robert Enselmo BACA, Defendant– Appellant.**

**No. 90CA1761.**

Colorado Court of Appeals, Div. IV.

Oct. 22, 1992.

Rehearing Denied Dec. 17, 1992.

Certiorari Denied June 7, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Roger G. Billotte, First Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Samuel Santistevan, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge METZGER.

Defendant, Robert Enselmo Baca, appeals the judgment of conviction entered upon jury verdicts finding him guilty of second degree murder, theft, and attempted theft. He also seeks review of the 45-year sentence imposed by the trial court for the murder count. We affirm both the judgment and the sentence.

The charges against defendant arose as a result of the strangulation death of an acquaintance of the defendant. According to defendant, he and the victim returned to the victim's home from a party at which both had become intoxicated. Defendant fell asleep and was awakened by the victim making sexual advances towards him. The two struggled, and defendant strangled the victim to death. He then took several pieces of jewelry, the victim's car keys, and left the scene. He was arrested almost two years later in California where he had been living under an assumed name.

## I.

Defendant contends the trial court committed error in submitting a jury instruction providing an additional definition of

"knowingly" as applied to second degree murder. While we agree that the instruction was unnecessary, we conclude that no reversible error occurred.

 The decision to provide a jury with additional written instructions which properly state the law is a matter within the trial court's sound discretion. *People v. Shearer*, 650 P.2d 1293 (Colo.App.1982). The resolution of issues committed to the discretion of the trial court will not constitute reversible error absent manifest prejudice or a clear showing of an abuse of discretion. *People v. Bowman*, 738 P.2d 387 (Colo.App.1987).

Section 18–3–103(1)(a), C.R.S. (1986 Repl. Vol. 8B) provides: "[A] person commits the crime of murder in the second degree if he causes the death of a person knowingly, but not after deliberation."

The trial court here gave two definitions of the term "knowingly." The first instruction (Instruction No. 19) was the instruction set out in *COLJI–Crim.* No. 6:01 (1983), which states:

A person acts 'knowingly' or 'willfully' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts 'knowingly' or 'willfully' with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result.

This instruction mirrors the statutory definition of "knowingly" found at § 18–1–501(6), C.R.S. (1986 Repl.Vol. 8B).

Also within the same instruction, which the trial court felt was "poorly worded and confusing," additional definitions of the requisite mental state as specifically applied to each offense were included. As applied to the offenses of second degree murder and manslaughter, the additional language provided:

A person acts 'knowingly' with respect to murder in the second degree (See instruction no. 14) and manslaughter (See instruction no. 14) when he is aware that his conduct is practically certain to cause death.

## A.

Defendant first argues that the trial court's supplemental definition of "knowingly" is inconsistent with the standard instruction and is legally insufficient because it defines the requisite mental culpability only in the terms of result and fails to address conduct or circumstances. Under the circumstances of this case, we disagree.

The definition of an offense *may* include conduct, circumstances, or result elements. Accordingly, the *mens rea* of "knowingly" is statutorily defined according to whether it applies to the nature of the forbidden conduct, or to the circumstances, or to the result of the conduct. *See* § 18–1–501(6); *see also People v. Derrera*, 667 P.2d 1363 (Colo.1983).

Although the distinction between an awareness of one's conduct or circumstance and an awareness of the result of one's conduct is at times subtle, it is a distinction recognized by the Colorado Criminal Code itself. *People v. Noble*, 635 P.2d 203 (Colo.1981).

The *mens rea* requirement for criminal conduct is denominated in the Colorado Criminal Code which generally follows American Law Institute, *Model Penal Code* § 2.02 (1985). Comments to that provision recognize that the material elements of offenses vary and that they may involve (1) the nature of forbidden conduct, or (2) the attendant circumstances, or (3) the result of the conduct. American Law Institute, *Model Penal Code* § 2.02 at 233–34 (1985). Therefore, when a statute requires a *mens rea* of "knowingly," it may speak to conduct, or to circumstances, or to result, or to any combination thereof, but not necessarily to all three.

 The prosecution must establish two factors to prove second degree murder. First, it must show that the death was more than merely a probable result of the defendant's actions. Second, it must demonstrate that the defendant was aware of the circumstances which made death prac-

tically certain. *People v. Mingo*, 196 Colo. 315, 584 P.2d 632 (1978).

However, the term "circumstances" used in *Mingo* speaks not to circumstances proscribed by statute, but to the circumstances of the event which were practically certain to result in death. *See People v. District Court*, 652 P.2d 582 (Colo.1982) (to prove second degree murder, it must be shown that the circumstances surrounding the shooting were sufficient to establish that the defendant was aware of the probable fatal consequences of his actions).

The distinctions among conduct, circumstances, and result become much clearer upon reviewing other criminal statutes in which the *mens rea* is "knowingly."

For example, the child abuse statute, § 18–6–401(1), C.R.S. (1986 Repl.Vol. 8B), provides that a person commits child abuse if he or she knowingly permits a child to be: (a) unreasonably placed in a situation which poses a threat of injury to the child's life or health; or engages in a continued pattern of conduct which results in (b) malnourishment; or (c) lack of proper medical care; or (d) cruel punishment; or (e) mistreatment; or (f) an accumulation of injuries ultimately resulting in death or serious bodily injury. In this statute, "knowingly" does not refer to the actor's awareness that his or her conduct is practically certain to cause the proscribed result. Instead, it refers to the actor's general awareness of the abusive nature of his or her conduct in relation to the child or to his or her awareness of the circumstances in which he or she commits an act against the well-being of a child. *People v. Noble*, *supra*.

Using another example, a person is guilty of attempted second degree kidnapping under § 18–3–302, C.R.S. (1986 Repl. Vol. 8B) if such person knowingly engages in conduct which is strongly corroborative of the firmness of his or her purpose knowingly to seize or carry another person from one place to another without consent or without lawful justification. *See People v. Lahr*, 200 Colo. 425, 615 P.2d 707 (1980).

Also, theft under § 18–4–401, C.R.S. (1986 Repl.Vol. 8B) requires proof that the accused knowingly obtained possession of or exercised control over property either without authorization or by theft or deception. *See People v. Griffie*, 44 Colo.App. 46, 610 P.2d 1079 (1980). Under that statute, the perpetrator must be aware that he or she is obtaining control over a thing of value without authorization as proscribed by statute. The statute itself speaks to circumstances which constitute "knowing" and does not focus solely on a result.

Similarly, theft by receiving under § 18–4–410, C.R.S. (1986 Repl.Vol. 8B) requires proof that the accused knew or believed the goods were stolen. Again, result is a factor, but circumstances proscribed by the statute, *i.e.*, knowing or believing that goods had been stolen, is the essential element to proving the *mens rea*. *People v. Griffie, supra.*

■ Here, the plain meaning of the court's additional instruction on the mental state of "knowingly" as applied to second degree murder required the prosecution to prove beyond a reasonable doubt that the defendant's awareness of his physical actions towards the victim were such that they were practically certain to cause the victim's death. This instruction was not inconsistent with either the standard instruction on "knowingly" or the statutory definition of second degree murder. Therefore, while the giving of the additional portion of the instruction was unnecessary, we conclude that it was not a misstatement of the law that would require reversal.

### B.

■ Defendant also argues that the trial court's additional instruction interfered with his affirmative defense of self-defense. He asserts that the trial court improperly foreclosed further consideration of the "knowingly" element with respect to the attendant circumstances which gave rise to the defendant's need to defend himself. Because this argument belies the clear intention of the second degree murder statute, we disagree.

"Circumstances" as used in § 18–1–501(6), C.R.S. (1986 Repl.Vol. 8B) does not

encompass those matters forming the context of an event but specifically refers to circumstances as proscribed by a statute defining an offense. Therefore, defendant's use of the term "circumstances" in its application to his affirmative defense is contrary to established law.

Additionally, we note that the jury was explicitly instructed that the elements of second degree murder included proof that the defendant acted without the affirmative defense of self-defense which was explained in a separate instruction. The trial court's instruction did not pose any barrier to the jury giving full consideration to the defendant's theory of defense.

## II.

Defendant next contends the trial court committed reversible error and undermined his claim that he acted in self-defense by disclosing to the jury that the defendant did not face the death penalty, by allowing the prosecution to present evidence of the victim's peaceful character in its case-in-chief, and by admitting cumulative evidence of the defendant's flight and use of an alias following the crime. We reject each of these contentions.

### A.

■ During voir dire, one potential juror revealed that she was opposed to the death penalty. The trial court responded, "It's not involved in this case." Defendant made no contemporaneous objection. The court questioned the juror further on other matters and subsequently excused her. Later, before opening statements, defense counsel moved to strike the jury panel or for a mistrial based on the court's earlier remark, and the court denied the motion. We perceive no abuse of discretion in the court's ruling.

We disagree with defendant's reliance on *People v. Braxton*, 807 P.2d 1214 (Colo. App.1990) to support his argument that the trial court's statement warranted a mistrial. First, neither *Braxton* nor any earlier case dealing with this issue, *see, e.g., People v. Hickam*, 684 P.2d 228 (Colo.1984), explains why statements concerning the applicability of the death penalty are deemed "improper." Secondly, *Braxton's* trial predated the General Assembly's enactment of § 16–10–110, C.R.S. (1992 Cum.Supp.) (effective July 1, 1989), which provides:

At the trial of any felony in which the prosecution is not seeking the death penalty, upon the request of the prosecution or the defendant, the court shall instruct the jury during voir dire that the prosecution is not seeking the death penalty.

No Colorado cases have interpreted this statutory section. However, the quoted language indicates that the General Assembly takes the position that it is not inherently prejudicial or improper to inform the jury that the death penalty is not involved in a case.

Although the statute does not specifically address the situation here, in which the trial court *sua sponte* instructed the potential jurors that this was not a death penalty case, the statutory requirement that the trial court give such an instruction when requested by either side is a factor to consider in our determination whether the court's statement warranted a mistrial.

■ The trial court has broad discretion to grant or deny a mistrial, and its decision will not be disturbed on appeal absent a gross abuse of discretion and prejudice to the defendant. Furthermore, a mistrial is a drastic remedy and is warranted only if the prejudice to the accused is too substantial to be remedied by other means. *People v. Abbott*, 690 P.2d 1263 (Colo.1984).

Defendant argued at trial that he was prejudiced by the court's statement. He asserted that, since the jurors knew that their verdict would not result in the death penalty, the court's statement had the tendency to encourage them to convict him on the charge of first degree murder, rather than on one of the lesser included offenses. However, this argument is defeated by the fact that the jury acquitted defendant of first degree murder and convicted him of the lesser included offense of second degree murder.

■ In addition, the jury was instructed that it was not to consider the possible punishment for the crimes and that neither sympathy nor prejudice should influence the verdict. Absent evidence to the contrary, we presume that the jury followed these instructions and that the instructions cured the prejudice, if any, to defendant from the court's statement. *See People v. Hickam, supra.*

Assuming, without deciding, that the trial court's statement was indeed improper, we conclude that any prejudice to defendant was not so pervasive that it could not be remedied by means less drastic than a mistrial. *See People v. Abbott, supra.* Accordingly, we find no abuse of discretion in the trial court's denial of defendant's request for a mistrial.

## B.

■ Defendant also argues that error occurred when the prosecution elicited testimony during its case-in-chief showing the victim's character trait of peacefulness before the defendant had presented any evidence that the victim was the initial aggressor. The error, if any, does not require reversal.

During opening statements, defense counsel introduced his client's claim of self-defense. In support of this theory, defense counsel, during cross-examination of the coroner, elicited testimony that fingernail marks found on the victim's neck were consistent with those that would result if the victim had been positioned over the defendant and the defendant had reached upwards to ward him off.

By virtue of this cross-examination, the defendant opened the door to the prosecutor's contrary evidence. Following the coroner's testimony, during the case-in-chief, the prosecutor asked two witnesses about their opinion of the victim's character for peacefulness. Later, defendant testified that the victim had initially assaulted him and that he was acting in self-defense. The prosecution then called several rebuttal witnesses who also testified to the victim's character trait of peacefulness.

CRE 404(a)(2) provides that evidence of the peaceful character of a homicide victim may be offered by the prosecution to rebut evidence that the victim was the first aggressor.

■ Even if we were to assume, *arguendo*, that the initial evidence of the victim's character trait of peacefulness was presented prematurely, because defense counsel made no objection at trial, the inquiry on appeal is limited to whether eliciting such testimony amounted to plain error.

■ Plain error occurs when the error substantially affects the verdict or the fairness of the trial proceedings. *People v. Kittrell,* 786 P.2d 467 (Colo.App.1989). Our review of the record indicates that the error, if any, did not so undermine the fairness of the trial as to cast serious doubt on the reliability of the defendant's conviction. *See People v. Wood,* 743 P.2d 422 (Colo.1987). Therefore, it did not amount to reversible error.

## C.

We find no merit in defendant's contention that the trial court abused its discretion when it admitted what the defendant argues was unnecessarily cumulative evidence of flight and when it denied his motion for a mistrial based on the prosecution's presentation of evidence concerning defendant's use of an alias.

■ Admission of cumulative evidence is within the trial court's discretion, and its ruling thereon will not be overturned on appeal unless there is an abuse of that discretion. *People v. Taylor,* 804 P.2d 196 (Colo.App.1990). An abuse of discretion occurs when, upon review, an appellate court can say with fair assurance that, based on the circumstances confronting the trial court, the decision made was manifestly arbitrary, unreasonable, or unfair. *People v. Milton,* 732 P.2d 1199 (Colo.1987).

■ The evidence concerning defendant's flight and the efforts by police to locate him was relevant to his consciousness of guilt, and its probative value was not substantially outweighed by the danger

of unfair prejudice. *See* CRE 403. Therefore, the trial court did not abuse its discretion in admitting this evidence.

 Likewise, the decision whether to grant or deny a mistrial is also within the trial court's discretion. *People v. Abbott, supra.* Here, before trial, the trial court had ruled that evidence of defendant's use of an alias would be inadmissible unless the prosecution first presented evidence that defendant had used the alias to avoid detection or arrest.

Without first establishing the relevance of this evidence, as instructed by the court, during cross-examination of the defendant's sister the prosecutor asked the witness whether she was aware that defendant was living under an assumed name.

The trial court denied defendant's motion for a mistrial on the prosecutor's assurance that he would establish, through the testimony of the arresting police officer scheduled to testify later that day, that the defendant had used the alias when confronted with the warrant for his arrest. On this basis, the court determined that evidence regarding the alias was relevant and admissible.

The trial court and counsel also agreed that a cautionary instruction should be given to the jury to counter any unfair prejudice to defendant. Consequently, the court twice instructed the jury that evidence of defendant's actions between the time of the crime and his arrest could be used only for the purpose of showing consciousness of guilt and not as evidence of any culpable mental state at the time of the crime.

It was within the discretion of the trial court to deny the motion for a mistrial and rely on a curative instruction. *See People v. Hickam, supra.* Although we do not attribute an abuse of discretion to the trial court under the circumstances here, we add that we do not condone the prosecutor's failure to comply with the trial court's pretrial order.

### III.

Finally, the defendant contends the trial court abused its discretion in sentencing him to imprisonment for 45 years without considering, as a mitigating factor, the fact that he was tested positive for the HIV virus, a condition which is a precursor to AIDS. We see no abuse of discretion.

 In determining whether a sentencing decision is the product of the proper exercise of the broad discretion accorded the sentencing court, an appellate court must focus on the nature of the offense, the character of the offender, the public interest in safety and deterrence, and evaluate whether the sentence actually imposed represents a fair accommodation of society's interest and the interest of the offender. And, if the record supports the sentencing court's decision to impose an extended term of imprisonment, the decision will not be disturbed on appellate review. *Rocha v. People,* 713 P.2d 350 (Colo. 1986).

Defendant has cited no Colorado cases which address this precise issue. However, several cases from other jurisdictions hold that a defendant's affliction with AIDS or HIV does not, by itself, warrant reduction of an otherwise appropriate sentence. *See U.S. v. DePew,* 751 F.Supp. 1195 (E.D.Va.1990) (comparing AIDS to cancer and other terminal or life-threatening conditions and recognizing that prisons have personnel and facilities required for necessary care and treatment); *People v. Perez,* 181 A.D.2d 922, 581 N.Y.S.2d 846 (1992); *Commonwealth v. O'Neil,* 393 Pa.Super. 111, 573 A.2d 1112 (1990). *But see State v. Thomas,* 818 S.W.2d 350 (Tenn. Crim.App.1991); *State v. Dockery,* 169 Ariz. 527, 821 P.2d 188 (Ct.App.1991).

In this case, the court was mandated to impose a sentence in the aggravated range for a class 2 felony of 16 to 48 years. *See* § 18-1-105, C.R.S. (1992 Cum.Supp.); § 18-3-103(3), (4), C.R.S. (1986 Repl.Vol. 8A); § 16-11-309, C.R.S. (1992 Cum.Supp.).

At the sentencing hearing, evidence was presented concerning defendant's psychological problems, his alcohol and drug use, his unwillingness to complete two substance abuse treatment programs, and his

criminal record, including a prior conviction for another violent offense.

The presentence report concluded that the defendant posed a high risk to the community and recommended that he be sentenced to an extended period in the Department of Corrections. The report also suggested that the court could later reconsider the sentence should defendant's health deteriorate to a point such that he was no longer a threat to society.

In explaining its reasons for defendant's sentence, the court was not unmindful of the defendant's condition, which was apparently stable at the time of sentencing. Yet, the court found the sentence justified by factors such as the unlikelihood that defendant could be rehabilitated and the need to protect society.

■ The record clearly demonstrates that the sentencing court, in imposing a 45–year sentence to the Department of Corrections, adequately considered the factors appropriate to a sentence determination. *See Rocha v. People, supra.* Further, we are satisfied that the sentence in question was consistent with the principal aims of sentencing. *See* § 18–1–102.5(1), C.R.S. (1986 Repl.Vol. 8B). Accordingly, the trial court did not abuse its discretion in failing to reduce an otherwise appropriate sentence because of defendant's condition of being HIV positive.

The judgment and sentence are affirmed.

TURSI and PLANK, JJ., concur.