23CA1160 Peo v Magee 04-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1160
City and County of Denver District Court No. 20CR2842
Honorable Eric M. Johnson, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

George Albert Magee,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE SULLIVAN
Fox and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 9, 2026

---

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Joseph Paul Hough, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, George Albert Magee, appeals the judgment of conviction entered on a jury verdict finding him guilty of attempted first degree murder, attempted second degree murder, and two counts of first degree assault.  We affirm.

I.     Background

¶ 2     In May 2020, Magee became embroiled in an altercation with three of his neighbors.  He shot and killed one neighbor, B.W., and shot and injured B.W.'s common law wife, M.H.  He also allegedly hit B.W.'s daughter, Q.W.  Magee then fled the scene and hid under a ramp next to a warehouse, where police eventually found him.

¶ 3     As relevant to this appeal, the prosecution charged Magee with two counts of first degree murder (after deliberation and extreme indifference) for killing B.W., two counts of attempted first degree murder (after deliberation and extreme indifference) for shooting M.H., two counts of first degree assault of M.H., and one count of second degree assault of Q.W.[1]

---

[1] The prosecution also charged Magee with four counts of possession of a weapon by a previous offender, four crime of violence sentence enhancers, and three habitual criminal counts. Those charges, which the court bifurcated, aren't relevant to this appeal.

¶ 4    At trial, Magee didn't dispute that he shot B.W. and M.H. but argued that he acted in self-defense.

¶ 5    The jury found Magee guilty of several charges related to M.H., including attempted first degree murder (extreme indifference), the lesser included charge of attempted second degree murder (after deliberation), and two counts of first degree assault.  But it found Magee not guilty of second degree assault of Q.W., and it hung on the two counts of first degree murder for killing B.W.

¶ 6    The trial court entered judgment and adjudicated Magee a habitual criminal under section 18-1.3-801(2.5), C.R.S. 2025.  It sentenced Magee to life in prison with a possibility of parole after forty years.

## II.    Discussion

¶ 7    Magee contends that the trial court erred by admitting improper other act and character evidence.  Specifically, he argues that the court shouldn't have admitted unredacted interview statements in which Magee discussed his felon status.  He also argues that the court shouldn't have admitted testimony about B.W.'s character for peacefulness.  We address and reject each contention in turn.

## A.     Applicable Law and Standard of Review

¶ 8     Other act evidence, including "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character."  CRE 404(b)(1).  But such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  CRE 404(b)(2).  Rule 404(b) applies only to extrinsic acts, and not to intrinsic acts that "directly prove the charged offense [or] occur contemporaneously with the charged offense and facilitate the commission of it."  *Rojas v. People*, 2022 CO 8, ¶ 44.

¶ 9     To determine whether extrinsic other act evidence is admissible, courts apply the four-part *Spoto* test, analyzing whether (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) that logical relevance is independent of the impermissible propensity inference; and (4) the evidence's probative value is substantially outweighed by the danger of unfair prejudice under CRE 403.  *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990); *see Rojas*, ¶ 52.

¶ 10    Evidence satisfies the first prong if it can be used to prove either of two types of material facts: "(1) actual elements of the charged offense, also called ultimate facts[;] or (2) intermediate facts, themselves probative of ultimate facts." *Yusem v. People*, 210 P.3d 458, 464 (Colo. 2009). It satisfies the second prong if it "has *any* tendency to make the existence of the material fact more or less probable than without the evidence." *Id.* at 464-65; *see* CRE 401.

¶ 11    Under the third prong, other act evidence is inadmissible if the evidence's logical relevance depends on an inference that the person who committed the other act has a bad character and is therefore more likely to have committed the crime at issue. *See id.* at 466.

¶ 12    Finally, under the fourth prong, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403; *see Yusem*, 210 P.3d at 467. Evidence is unfairly prejudicial if it invites the jury to decide the case on an improper basis, such as sympathy, hatred, contempt, retribution, or horror. *People v. Allgier*, 2018 COA 122, ¶ 31.

¶ 13    To determine whether evidence should be excluded under Rule 403, courts consider multiple factors, including (1) the importance of the fact the evidence seeks to prove; (2) the strength

and length of the chain of inferences necessary to prove that fact; (3) whether the fact is disputed; (4) the availability of alternative means of proof; and (5) the potential effectiveness of a limiting instruction.  *Yusem*, 210 P.3d at 467-68 (citing *Vialpando v. People*, 727 P.2d 1090, 1096 (Colo. 1986)).  In reviewing the trial court's decision, we afford the evidence its maximum probative value and its minimum unfair prejudice.  *Id.* at 467.

¶ 14    Similar to other act evidence, "[e]vidence of a person's character or a trait of that person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion."  CRE 404(a).  In a homicide case, however, the prosecution may offer "evidence of a character trait of peacefulness of the alleged victim . . . to rebut evidence that the alleged victim was the first aggressor."  CRE 404(a)(2); *see People v. Baca*, 852 P.2d 1302, 1308 (Colo. App. 1992).

¶ 15    We review a trial court's decision to admit evidence, including character evidence and other act evidence, for an abuse of discretion.  *See People v. Trujillo*, 2015 COA 22, ¶ 8; *Yusem*, 210 P.3d at 463.  A court abuses its discretion when its decision is

manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *People v. Feldman*, 2024 COA 119, ¶ 28.

### B.    Unredacted Video

¶ 16    Magee first contends that the trial court erred by admitting an unredacted video interview. Specifically, Magee argues that statements he made in a recorded interview regarding his criminal history constitute inadmissible other act evidence that the court should have excluded or redacted.[2] We disagree.

### 1.    Additional Background

¶ 17    After the police arrested Magee, a detective interviewed Magee at a police station. In that video-recorded interview, the detective talked with Magee for about fifteen minutes then left the room. Magee then spoke aloud, with no one else in the room, for about nine minutes. As relevant here, Magee said

> But George, you shot him? Yeah! That's why
> you get a gun for. But you're a big guy? Yeah!
> And? I'm a big old guy with health issues like
> a mother fucker. My ankle's fucked up, I can't

---

[2] The People argue that Magee invited any error as to the statements being admitted without redactions, or that he waived this issue. Because we conclude the trial court didn't err by admitting the statements in their entirety, we will assume, for the purposes of our analysis only, that Magee preserved this issue. *See, e.g., People v. Casper*, 2025 COA 69, ¶ 48.

fight like I used to fight.  Man, and I ain't got no reason for me to fight like I used to fight. I'm fifty mother fucking years old, these young mother fuckers want to fight, I'm shootin' man. I'm a three-time mother fucking felon.  I could punch somebody in the fucking face and break they nose and get life.  So if it's worth fighting for it's worth killing for.  That's how I figure.

Don't nobody know my position but me.  I'm a three-time violent offender.  So if I fight dude and just break his mother fucking nose that means I'm gone forever.  So what, why, what, why should I risk myself fighting somebody? I'm going to get just as much time killing somebody, shooting somebody protecting myself.  It ain't like I went over there and started shooting mother fuckers.  Mother fuckers was punching on me, man.

The detective eventually returned and ended the interview after questioning Magee for another few minutes.

¶ 18    Before trial, the prosecution filed a notice of intent to introduce bad acts evidence, including Magee's discussion of his status as a three-time felon during the recorded interview.  At a pretrial hearing, the prosecution clarified that it sought to introduce the full video interview, including the entirety of Magee's soliloquy. Defense counsel objected and argued that Magee's statements about his felon status constituted improper propensity evidence. The court disagreed with defense counsel, reasoning that Magee's

7

statements went "directly" to his intent, deliberation, and claim of self-defense. The court therefore found that the statements were relevant independent of any character or propensity inference. The court noted that it would allow the prosecution to play the entire soliloquy "unless the defense wants it edited." It added that "if the defense requests, we will craft a limiting instruction."

¶ 19 At trial, the prosecution said it intended to play the entire soliloquy but redact other inadmissible portions of the interview. Defense counsel objected to any redactions, arguing they had relied on the court's earlier ruling that the entire video would be played.

¶ 20 The court clarified that it had ruled only that Magee's soliloquy statements about his felon status were admissible under Rule 404(b), and that it hadn't foreclosed arguments that other portions of the video should be excluded for other reasons. Ultimately, the court told the prosecution that it could redact a limited portion of the video during which Magee was speaking with the detective. The court also told defense counsel, however, that the defense could play the video in its entirety if they wished.

¶ 21    The prosecution introduced the redacted video, although the soliloquy itself wasn't redacted.  Before playing the video, the court read the following limiting instruction to the jury:

> So I'm specifically ordering you not to consider any statements about past record for propensity purposes.  That is, anything he says he did in the past does not make it more or less likely he did what he's accused of today in this trial.

> I'm allowing the statement in and allowing the statements to be presented for a limited purpose.  And that purpose is this and only this[:] Mr. Magee's state of mind during the events in question.

> So I'm admitting it for that purpose only.  And you may consider his statements as to his past only . . . as it affects or gives you insight into what was in his head, his state of mind, at the time of these events.

¶ 22    The next day, Magee introduced the unredacted video recording into evidence.  Before playing the video, the court reminded the jury that it could consider Magee's statements about his criminal history only for the purpose of understanding Magee's state of mind.

### 2.    Analysis

¶ 23    We conclude that Magee's soliloquy — including his two statements about being a "three-time" felon or offender — satisfied

9

the *Spoto* test. The trial court therefore didn't abuse its discretion by admitting the video recording without redacting those statements.

¶ 24    The statements satisfied the first two *Spoto* prongs because they were relevant to the material fact of Magee's mental state. *See Yusem*, 210 P.3d at 464-65. By revealing Magee's thought process underlying his choice to shoot his gun rather than use lesser force, the statements tended to prove that Magee acted after deliberation and with the intent to cause the death of another, both elements of first degree murder under section 18-3-102(1)(a), C.R.S. 2025. The statements similarly tended to show that Magee acted under circumstances manifesting extreme indifference to the value of human life, and that he knowingly engaged in conduct that created a grave risk of death to a person. These are elements of first degree murder under section 18-3-102(1)(d) and first degree assault under section 18-3-202(1)(c), C.R.S. 2025 — both charges Magee faced. Last, the statements about his "three-time" offender status tended to disprove a required element of Magee's self-defense claim — that he used only that degree of force which he reasonably believed to be necessary to defend himself. *See* § 18-1-704(1), (2), C.R.S. 2025.

¶ 25　　The statements also satisfied *Spoto*'s third prong because their relevance wasn't dependent on any prohibited propensity inference. True, Magee's references to his status as a three-time felon may have raised the inference that Magee has bad character and must have committed the crimes in question. But the statements' relevance wasn't dependent on that prohibited inference. To the contrary, they *also* provided insight into Magee's state of mind, offered an explanation for why he shot his neighbors rather than use lesser force, and tended to prove elements of the charged offenses while simultaneously disproving his claim of self-defense. *See People v. Cousins*, 181 P.3d 365, 372 (Colo. App. 2007) (other act evidence created acceptable inference that the defendant had a motive to commit the charged offense); *see also People v. Lancaster*, 2022 COA 82, ¶ 47 (explaining that even if the other act evidence injects "some bad character evidence into the trial, the crucial question is whether a jury could reasonably consider that evidence for a proper purpose, independent of this bad character inference").

¶ 26　　Finally, under *Spoto*'s fourth prong and the *Yusem* factors, we conclude the trial court acted within its discretion by finding that

the danger of unfair prejudice didn't substantially outweigh the statements' probative value.

¶ 27    As to probative value, the statements were highly probative because they gave direct insight into Magee's state of mind and intent, elements of both the charged offenses and Magee's self-defense claim. *See Vialpando*, 727 P.2d at 1096 (evidence that bore on essential elements was important and admissible); *People v. Villa*, 240 P.3d 343, 352 (Colo. App. 2009) (upholding admission of other act evidence that was "highly probative of [the] defendant's intent"). And the chain of inferences necessary to determine Magee's state of mind was short because he explicitly relayed what he was thinking and why he shot his neighbors rather than use less lethal force. As the trial court aptly put it, there was "a single link to this chain" because the soliloquy showed "actually what was going on in his head." Moreover, whether Magee met the mens rea elements of the charged crimes was disputed. *See Yusem*, 210 P.3d at 468. And by claiming self-defense, he put the elements of that defense at issue, including the reasonableness of his belief that lesser force would have proved inadequate.

¶ 28    We also discern no available alternative to prove Magee's state of mind that would have been comparably probative.  Magee chose not to testify at trial.  *See* U.S. Const. amend. V ("No person shall be . . . compelled in any criminal case to be a witness against himself . . . .").  And contrary to Magee's argument, redacting the "three-time" offender statements would have eliminated important context for the jury by removing the core reason that Magee felt justified in shooting his gun rather than using lesser force.

¶ 29    Turning to the danger of unfair prejudice, we conclude that the trial court acted within its discretion by finding that the statements didn't invite the jury to decide the case on an improper basis.  In his soliloquy, Magee didn't discuss any details of his prior convictions.  *See People v. Underwood*, 53 P.3d 765, 771 (Colo. App. 2002) (other act evidence wasn't unduly prejudicial when it wasn't described in great detail).  And while his references to his felon status may have injected some prejudice, those statements were likely less inflammatory than the evidence presented to the jury regarding Magee shooting B.W. and M.H.  *See People v. Rath*, 44 P.3d 1033, 1043 (Colo. 2002) (other acts were less serious than the

sexual assaults presented to the jury and were therefore "less likely to have an inflammatory effect").

¶ 30    Finally, the court properly instructed the jury not to consider the statements for any propensity purpose. *See People v. Kembel*, 2023 CO 5, ¶ 50 (instruction about the limited use of other act evidence can effectively reduce the risk of prejudice, and we presume the jury follows instructions).

¶ 31    Accordingly, because Magee's statements satisfied *Spoto*'s four prongs, we conclude the trial court didn't abuse its discretion by admitting the unredacted statements.[3]

### C.    B.W.'s Peacefulness

¶ 32    Magee also contends that the trial court erred by admitting evidence of B.W.'s character for peacefulness. Again, we disagree.

### 1.    Additional Background

¶ 33    During opening statements, defense counsel declared, "[T]his is a self-defense case." Counsel argued that Magee had found himself "in the middle of a dangerous and volatile situation with

---

[3] Because we conclude that Magee's statements were admissible as extrinsic evidence, we don't address the People's contention that they were also admissible as intrinsic evidence. *See Rojas v. People*, 2022 CO 8, ¶ 52.

14

multiple parties, multiple family members," and that he acted "to defend himself from the threat that was issued against him." Counsel then concluded his opening statement by imploring the jury to find that "Magee was acting in self-defense and[,] because of that, [to] find he is not guilty."

¶ 34   The prosecution called M.H. as a witness during its case-in-chief.  During defense counsel's cross-examination, M.H. testified that she saw Magee push Q.W.  According to M.H., B.W. then came outside and told Magee not to touch his daughter.  B.W. then swung at Magee, prompting Magee to shoot his gun.  Upon further questioning, M.H. confirmed that Magee pulled out his gun after B.W. started swinging at him.

¶ 35   Later, the prosecution called Q.W. as a witness.  Q.W. testified that she saw B.W. hit Magee "[o]ne or two times."  Magee then shot B.W.

¶ 36   After Q.W. confirmed again that she saw her father swing at Magee, the following exchange occurred during the prosecution's redirect:

> [PROSECUTOR]: Okay.  Was it normal for you
> to see your dad hitting anybody?

15

[Q.W.]: Never.

[PROSECUTOR]: Okay. Would you describe your dad as an aggressive person?

[Q.W.]: Not at all.

[DEFENSE COUNSEL]: Objection, improper character evidence.

THE COURT: Overruled. 404(a)(2).

[PROSECUTOR]: You can answer the question.

[Q.W.]: Not at all.

[PROSECUTOR]: How would you describe him?

[Q.W.]: Goofy jokester, likes to rap.

## 2. Analysis

¶ 37 Defense counsel told the jury in opening arguments that Magee acted in self-defense. Consistent with that theory, M.H. testified, in response to defense counsel's questions, that Magee didn't shoot his gun until after B.W. started swinging at him. This constitutes evidence that B.W., an alleged victim, was the first aggressor. By eliciting this evidence, defense counsel opened the door to the prosecution later rebutting it by offering evidence of B.W.'s peacefulness. *See* CRE 404(a)(2); *Baca*, 852 P.2d at 1308 (the defendant opened the door to evidence of the victim's

peacefulness by discussing self-defense during opening statements and eliciting testimony that the victim's wounds were consistent with the defendant defending himself).  As a result, the trial court didn't abuse its discretion by admitting Q.W.'s testimony about B.W.'s peacefulness.

¶ 38     Magee also argues that Q.W.'s testimony that she never saw her father hit anyone should have been excluded under Rule 404(a)(2) because it constituted evidence of "specific instances of conduct" rather than a "general character trait[]."  Because Magee didn't object to this specific testimony at trial, we review for plain error, meaning the error must be both obvious and substantial. *Trujillo*, ¶ 8.

¶ 39     Character is "a generalized description of a person's disposition, or of the disposition in respect to a general trait." *Trujillo*, ¶ 11 (citation omitted).  In her testimony, Q.W. described B.W.'s general disposition towards not hitting others.  Although we haven't located any on-point Colorado authority addressing this question, and Magee cites none, federal courts have recognized that a witness's testimony that a person never did something generally qualifies as character evidence.  *See Sec. & Exch. Comm'n v. Peters*,

978 F.2d 1162, 1171 (10th Cir. 1992) (the defendant's testimony that he had never been accused of wrongdoing was character evidence); *Gov't of the V.I. v. Roldan*, 612 F.2d 775, 777-78 (3d Cir. 1979) (the witness's testimony that she never saw people go to the defendant's house and that the defendant never bothered anyone related to the defendant's character); *see generally People v. Gallegos*, 226 P.3d 1112, 1117-18 (Colo. App. 2009) (federal court decisions interpreting similar federal rules provide persuasive guidance). We therefore conclude the trial court didn't err by failing to sua sponte exclude Q.W.'s testimony.

¶ 40    To the extent Magee argues that Q.W.'s testimony should have been excluded for some other reason, we decline to address his argument because it's undeveloped. *See People v. Lowe*, 2021 CO 51, ¶ 20 n.4.

## D.    Cumulative Error

¶ 41    Magee also argues that the cumulative impact of the trial court's alleged errors requires reversal. But because we haven't identified any error, the cumulative error doctrine doesn't apply. *Feldman*, ¶ 50.

### III.    Disposition

¶ 42    We affirm the judgment.

JUDGE FOX and JUDGE KUHN concur.